USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 2 8 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Inventel Products LLC,

              Plaintiff,

—v—

Penn LLC, *et al.*,

              Defendants.

16-cv-1649 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

In this case, Defendants have filed a motion to transfer the case to the Northern District of Illinois and, in the alternative, a motion to dismiss. For the following reasons, the Court grants the motion to transfer to the Northern District of Illinois and therefore declines to address the motion to dismiss.

**I.    Background**

Plaintiff Inventel Products ("Inventel") is a company that creates and markets "As Seen On TV" products. Compl. ¶¶ 10-11 (Dkt No. 1); Opp. at 2 (Dkt No. 25). Inventel is organized under the laws of, and based in, the state of New Jersey. Comp. ¶ 5. The company sells its products on television and online to customers across the United States. Compl. ¶¶ 11, 14; Opp. at 2. One of the company's products is the "DashCam Pro," a personal security camera that mounts to the interior windshield of a car. Compl. ¶12-16. Inventel "prominently markets" its DashCam as an "As Seen on TV" product. Compl. ¶ 15.

Defendant Penn LLC owns PulseTV.com, a website that sells various consumer products. Compl. ¶¶ 6, 17; Opp. at 7. Defendant Pulse Direct, Inc. is Penn LLC's managing member. Compl. ¶ 7; Mot. at 2 (Dkt No. 20); Zegar Decl. ¶ 3 (Dkt No. 22). Both Defendants are located

1

in Illinois. Compl. ¶¶ 6-7; Mot. at 2; Zegar Decl. ¶¶ 2-3, 25. One of Defendants' products is the "Hype Dashboard Camera," which, like Inventel's DashCam, is a personal security camera for cars. Compl. ¶¶ 17-18; Mot. at 2-3. Defendants promote this product online to customers throughout the United States. Compl. ¶¶ 18, 24; Mot. at 2-3; Zegar Decl. ¶ 5.

According to Inventel, Defendants have falsely advertised their Hype Dashboard Camera as an "As Seen On TV" product. Compl. ¶¶ 18, 36. Inventel alleges that Defendants use "the As Seen On TV marketing description" in order to induce customers to purchase the Hype Dashboard Camera, even though Defendants' camera is not actually an "As Seen on TV" product. Compl. ¶¶ 36-37; Opp. at 4. Inventel contends that these actions constitute, among other things, unfair competition in violation of the Lanham Act. Compl. ¶¶ 35-41; 15 U.S.C. § 1125.

Invented originally filed a lawsuit in New Jersey state court on December 11, 2015. Shravah Decl. Ex. A (Dkt No. 21-1); Mot. at 1-2; Opp. at 5. That lawsuit also raised a Lanham Act claim. Shravah Decl. Ex. A. Defendants removed the case to the United States District Court for the District of New Jersey on January 8, 2016. Shravah Decl. Ex. B (Dkt No. 21-2); Mot. at 2; Opp. at 5. On January 25, 2016, Inventel voluntarily dismissed the New Jersey action. Shravah Decl. Ex. C (Dkt No. 21-3); Mot. at 2; Opp. at 5. The parties dispute why Inventel did so. Inventel claims it dismissed the case because the parties reached an agreement that Defendants would stop using "As Seen on TV" marketing for the Hype Dashboard Camera. Opp. at 5; Abdul Decl. ¶ 48. Defendants respond that this allegation is fabricated and that there was never any such agreement. Reply at 4 (Dkt No. 28).

A few months later, on March 3, 2016, Inventel filed the instant lawsuit. Dkt No. 1. Just as in the previously filed New Jersey case, Inventel contends that Defendants' "As Seen on TV"

marketing campaign for the Hype Dashboard Camera violates the Lanham Act. Compl. ¶¶ 35-41. According to Inventel, it was forced to refile its lawsuit because Defendants continued to use "As Seen on TV" marketing in violation of the agreement allegedly reached in the New Jersey action. Opp. at 5. Inventel also asserts that it decided to refile this case in New York, rather than New Jersey, because it obtained new counsel that is located in New York. Opp. at 5-6; Abdul Decl. ¶ 50.

On April 11, 2016, Defendants filed a motion to dismiss and, in the alternative, a motion to transfer the case to the Northern District of Illinois. Dkt No. 19. The motion to dismiss contends that the Court lacks personal jurisdiction over the Defendants, that venue is improper, and that two of Inventel's state law claims should be dismissed for failure to state a claim. Mot. at 4-10, 17-20. Upon receiving the motion to dismiss, the Court *sua sponte* gave Inventel an opportunity to amend its complaint, but the company declined to do so. Dkt Nos. 23-25. Instead, Inventel filed an opposition to the motion to dismiss and the motion to transfer. Dkt No. 25.

## II. Personal Jurisdiction

Defendants' motion contends both that the Court lacks personal jurisdiction over them and that the case should be transferred in the interests of justice. Mot. at 4-9, 11-16. The Court need not rule on the personal jurisdiction question because a district court may resolve a motion to transfer without first resolving the issue of personal jurisdiction. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007); *Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir. 2001) ("The district court has th[e] power to transfer venue [under § 1404(a)] even if it lacks personal jurisdiction over the defendants."); *McGraw-Hill Cos. Inc. v. Jones*, No. 12–CV–7085 (AJN), 2014 WL 988607, at *5 (S.D.N.Y. Mar. 12, 2014).

### III. The Court Grants the Motion to Transfer

Defendants seek to transfer this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Mot. at 11. Under Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

To determine whether transfer is appropriate, the Court applies a two-step inquiry. First, the Court examines whether the action could have been brought in the proposed transferee court, in this case the Northern District of Illinois. *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004); *P.E.A. Films, Inc. v. Metro-Goldwyn-Mayer, Inc.*, No. 14–CV–7263 (JSR), 2014 WL 6769377, at *1 (S.D.N.Y. Nov. 12, 2014); *McGraw-Hill*, 2014 WL 988607, at *5. Second, the Court "balance[s] the private and public interests," *Gross*, 386 F.3d at 230, to determine whether transfer is warranted "[f]or the convenience of parties and witnesses, [and] in the interest of justice," 28 U.S.C. § 1404(a).

#### A. This Action Could Have Been Brought in the Northern District of Illinois

"The first step in deciding a motion to transfer venue under § 1404(a) is to assess whether the action could have been brought in the transferee district." *De Souza v. JPMorgan Chase & Co.*, No. 12 Civ. 1738 (AJN), 2013 WL 11313241, at *1 (S.D.N.Y. July 16, 2013). Here, the parties agree that this lawsuit could have been brought in the Northern District of Illinois. Mot. at 11-12; Opp. at 10 ("It is not in dispute that the action could have been brought in the N.D.Il."). Under 28 U.S.C. § 1391(b)(1), a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Both of the defendants "reside" in the Northern District of Illinois, and thus venue would be

4

proper in the transferee district. Mot. at 11-12; Zegar Decl. ¶¶ 2-3, 25-26; *see SBAV LP v. Porter Bancorp, Inc.*, No. 13 Civ. 372(PAE), 2013 WL 3467030, at *3 (S.D.N.Y. July 10, 2013).

### B. The Other Factors Favor Transfer

"Next, the Court must determine whether transfer would be an appropriate exercise of its discretion." *De Souza*, 2013 WL 11313241, at *2. A multifactor, totality of the circumstances test applies when making the decision. "Among the factors to be considered in determining whether to grant a motion to transfer venue are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & General Ins. Co. v. Lafarge North Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (citation and quotation marks omitted). The Court analyzes each of these factors in turn.

#### 1. Plaintiff's Choice of Forum

In many instances, the plaintiff's choice of forum is "entitled to substantial deference." *Gross*, 386 F.3d at 230. Accordingly, the fact that Inventel wishes to litigate this case in New York cuts against Defendants' motion to transfer. However, the deference a court should give to this factor diminishes when, as here, "the forum selected is not the plaintiff's home forum or the place where the operative facts of the action occurred." *McGraw-Hill*, 2014 WL 988607, at *7; *see also Gross*, 386 F.3d at 230 ("[T]he degree of deference to the plaintiff's forum depends in part on a number of considerations, such as the plaintiff's own connection to that forum."). This principle applies "even when the plaintiff's home district is adjacent to the forum." *Levy v. Welsh*, No. 12–CV–2056 (DLI)(VMS), 2013 WL 1149152, at *5 (E.D.N.Y. Mar. 19, 2013)

5

(quoting *Nabisco, Inc. v. Brach's Confections, Inc.*, 2000 WL 1677935, at *4 (S.D.N.Y. Nov. 8, 2000)).

Here, Inventel has almost no connection to its chosen forum. Inventel is a New Jersey company. Compl. ¶ 5. Beyond being the location of its lawyers, Inventel's only connection to New York is that, through its online sales, it inevitably sells products to New York customers. *See* Compl. ¶ 10; Opp. at 4-5. But Inventel sells its products to customers across the United States, and New York has no more of a significant connection to this case than any of the other states in which Inventel's consumers are located. "[S]ince New York is not Plaintiff's home district, little weight is afforded to its choice to litigate in this District." *Pausch Medical GmBH v. Pausch LLC*, No. 14–cv–1945 (PAC), 2015 WL 783365, at *1 (S.D.N.Y. Feb. 24, 2015) (citing *Tole v. Glenn Miller Prods., Inc.*, 2013 WL 4006134, at *5 (S.D.N.Y. Aug. 6, 2013)).

### 2. The Convenience of the Witnesses and the Parties

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008) (quoting *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006)). Here, none of the parties have any significant connection to New York. As mentioned above, Plaintiff Inventel is a New Jersey company: the company was organized under the laws of New Jersey, and the company's principal place of business is Rockaway, New Jersey. Compl. ¶ 5; Abdul Dec. ¶ 2 (Dkt No. 26). The defendants are from Illinois: Defendant Penn LLC is a Delaware Corporation based in Illinois, and Defendant Pulse Direct is organized under Illinois law and based in Illinois. Compl. ¶¶ 6-7; Mot. at 2; Zegar Decl. ¶¶ 2-3, 25. None of the parties have any sort of place in business in New York. *See* Opp. at 4; Zegar Decl. ¶¶ 2-3; Abdul Decl. ¶¶ 2, 31. They do not do any in-

person sales of their products in New York, nor do they specifically target New York customers. *See* Opp. at 4; Abdul Decl. ¶¶ 10-16. To the extent any of the parties in this litigation do any sales in New York, it is because their products are available online and on television and may be purchased by anyone in the United States, including customers located in New York.

Similarly, the expected witnesses in this case overwhelmingly reside outside of New York. Inventel identifies twelve witnesses it expects to testify, all of which except for one live or work in New Jersey. Abdul Dec. ¶¶ 33-46. Most of the witnesses are employees of Inventel, and the rest are mainly retailers located in New Jersey who sell Inventel products. *Id.* Defendants identify four witnesses that they expect will testify, all of whom are employees of Defendants and work in Defendants' Illinois office. Zegar Dec. ¶¶ 24-25. In short, only one of sixteen identified potential witnesses is located in Inventel's chosen forum. In contrast, the Defendants and all of their witnesses are located in the proposed transferee forum. This suggests that transfer is appropriate.

Despite the lack of connection between New York and the parties and witnesses, Inventel contends that "convenience of both the party and non-party witnesses" factor favors keeping the case here because New York is close to New Jersey. Opp. at 11-14. The Court finds this argument unpersuasive. While it is true that the Southern District of New York is more convenient than Illinois for Inventel and its witnesses, this is only because Inventel and nearly all of its witnesses are located in *New Jersey*, not because they live in New York. The proximity of New Jersey to New York does not preclude transfer. *See Freeman v. Hoffmann-La Roche Inc.*, No. 06CIV13497(RMB)(RLE), 2007 WL 895282, at *2 (S.D.N.Y. Mar. 21, 2007) (granting motion to dismiss out of the Southern District of New York when one plaintiff resided in New Jersey, one plaintiff resided in Kansas, and the defendants had their headquarters and principal

7

place of business in New Jersey); *Bernal v. Du Pont De Nemours E.I. and Corp.*, No. 93 Civ. 1639 (PKL), 1993 WL 378790, at *3 (S.D.N.Y. Sept. 24, 1993) (granting motion to transfer to New Jersey, even though the plaintiffs "continually stressed that the Southern District is easily accessible from New Jersey"); *De Jesus v. Nat'l R.R. Passenger Corp.*, 725 F. Supp. 207, 209 (S.D.N.Y. 1989) (granting motion to transfer, notwithstanding "the proximity of New York to New Jersey," because the case "ha[d] no significant connection" to New York).

The Court concludes that the "convenience of witnesses and parties" factor is either neutral or favors transfer.

### 3. Location of Relevant Documents and Relative Ease of Access to Sources of Proof

In today's modern world of electronic documents, the location of relevant documents is a largely neutral factor. *Dentsply Int'l Inc. v. Dental Brands for Less LLC*, No. 15 Civ. 8775 (LGS), 2016 WL 868335, at *2 (S.D.N.Y. Mar. 4, 2016); *Nelson v. Myrtle Beach Collegiate Summer Baseball League, LLC*, No. 3:12cv1655 (JBA), 2013 WL 6273890, at *10 (D. Conn. Dec. 4, 2013) ("[M]odern technology limits the weight of this factor."). Both parties concede that the location of relevant documents has little relevance to the transfer motion. *See* Mot. at 13 ("Admittedly, it would not be particularly burdensome for Defendants to bring its documents to New York."); Opp. at 15 ("[I]n the age of electronic documents, it is not inconvenient for either party to bring their documents to either court house."). The Court therefore finds this factor neutral.

### 4. The Locus of Operative Facts

The "locus of operative facts" is an important factor to consider when deciding a motion to transfer. *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012). But this factor has proved problematic in cases like this, where a plaintiff alleges that an infringing product was sold

8

in multiple states. *Id.* at 19-21. Some courts have concluded that the "locus of operative facts" is the plaintiff's initially chosen forum so long as there have been any sales in that forum. *See id.*; *see, e.g., Quiksilver*, 581 F. Supp. 2d at 549; *Kiss My Face Corp. v. Bunting*, No. 02CIV2645 (RCC), 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003). If true, then this factor would favor keeping the case in New York. In contrast, other courts have concluded that "where a party's products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer." *Mola, Inc. v. Kacey Enters., LLC*, No. 10-CV-1045S, 2011 WL 3667505, at *9 (W.D.N.Y. Aug. 21, 2011) (alteration omitted) (quoting *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d, 433, 439-40 (S.D.N.Y. 2000)).

This Court has previously sided with those courts taking the latter position. The Court concluded "that those cases holding that the initially chosen forum is the locus of operative facts if there have been sales in that district, notwithstanding sales outside the district, are not persuasive." *CYI, Inc.*, 913 F. Supp. 2d at 21. The Court explained that, when an infringing product (or, in this case, a product with an allegedly false marketing campaign) has been sold in multiple districts, "each such district has a roughly equivalent claim to being the locus of operative facts." *Id.* Furthermore, to conclude that the locus of operative facts is the initially chosen forum would be to "conflate" the two factors "of the locus of operative facts" and "the Plaintiff's choice of forum." *Id.* This Court further reasoned that the location of "the design and development of the allegedly infringing products" was relevant to the locus of the operative facts. *Id.* Applying that concept here, the location of the design of the allegedly false marketing campaign, in this case Illinois, is relevant to the "locus of operative facts" factor. *See id.*; *see also Mak Mktg., Inc. v. Kalapos*, 620 F. Supp. 2d 295, 310 (D. Conn. 2009)

9

("[M]isrepresentations and omissions are deemed to occur in the district where they are transmitted or withheld, not where they are received." (citations and quotation marks omitted)). For these reasons, the Court concludes that the "locus of operative facts" factor is either neutral or slightly favors transfer. *See also AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 530 (S.D.N.Y. 2004) (concluding the locus of operative facts in an unfair competition case was the initial forum but affording this factor limited weight given that most of defendant's contacts were in the proposed transferee district and most of the allegedly illegal acts occurred outside New York); *Herbert Ltd. P'ship v. Electronic Arts Inc.*, 325 F. Supp. 2d 282, 289 (S.D.N.Y. July 8, 2004) (concluding that the locus of operative facts was the initial forum but giving this factor little weight because sales of the allegedly infringing products also occurred in other states).

### 5. The Availability of Process to Compel the Attendance of Unwilling Witnesses

"Ordinarily availability of process to compel the attendance of unwilling non-party witnesses . . . is a consideration in determining a motion to transfer." *FTC v. Navestad*, No. 09–CV–6329T, 2010 WL 743899, at *3 (W.D.N.Y. Feb. 25, 2010). Here, Defendants do not identify any nonparty witnesses they anticipate will testify, but Inventel does identify five such witnesses. Abdul Decl. ¶¶ 41-45. Four of Inventel's potential nonparty witnesses are located in New Jersey, and one of them is located in New York. *Id.* This Court could exercise subpoena power over these nonparty witnesses if they refused to testify. *See* Fed. R. Civ. P. 45(c); *Local Union No. 3 Int'l Bhd. of Elec. Workers v. General Elec. Int'l*, No. 10 CV. 7319(BSJ), 2011 WL 1842239, at *4 (S.D.N.Y. May 9, 2011) ("[T]he Court could exercise subpoena power over all those domiciled within a 100–mile radius from Manhattan under Rule 45[.]"). This suggests that New York is an appropriate forum.

Although the Court concludes that this factor cuts against transfer, it also finds that this factor is entitled to less weight than others because Inventel does not assert that any of its potential nonparty witnesses have indicated an unwillingness to testify. *See* Opp. at 14-15; Abdul Decl. ¶¶ 41-45; *Accantia Grp. Holdings v. Food Mkt. Merch., Inc.*, 908 F. Supp. 2d 439, 442 n.1 (S.D.N.Y. 2012) ("[A]vailability of process to compel attendance does not weigh in favor of transfer when no non-party witness indicated unwillingness to testify."); *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 354 (S.D.N.Y. 2012) ("There is no indication that any non-party witnesses would refuse to appear and, thus, this factor is neutral."); *Mastr Asset Backed Secs. Trust 2007-WMC1 ex rel. U.S. Bank N.A. v. WMC Mortgage LLC*, 880 F. Supp. 2d 418, 422 (S.D.N.Y. 2012); *Fuji Photo Film Co., Ltd.*, 415 F. Supp. 2d at 375 ("Because parties can compel the testimony of their own employees without the need for subpoena, and because neither plaintiffs nor defendant indicate that any non-party witnesses will be called to testify, or that if they are called they will be unwilling to testify, this factor has no impact on the analysis.").

### 6. The Relative Means of the Parties

Finally, "the relative means of the parties" is relevant when deciding a motion to transfer. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006) (citation omitted). However, "[t]his factor is not entitled to great weight" when, as is true here, "plaintiff and defendant are both corporations." *American Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) (quoting *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998)). The Court therefore finds this factor neutral. *See* Opp. at 17 (conceding this point).

### C. Summary

Applying the multi-factor test, the Court concludes that transfer is warranted in this case. This case has very little connection to New York. Neither Plaintiff nor Defendants are incorporated in, or have any places of business in, New York. The parties do not appear to target New York customers any more vigorously than they target customers in other states. The connections between this case and Plaintiff's chosen forum appear limited to the fact that Inventel's attorneys are located in New York and that Inventel sells the DashCam across the United States, including in New York. Given the lack of connection between this case and New York, it is unsurprising that nearly all of the relevant factors are either neutral or favor a transfer to the Northern District of Illinois, a forum that has a more significant relationship to this case given that it is where the defendants are located. *See McGraw-Hill*, 2014 WL 988607, at *11 (granting motion to transfer when "[t]he only factor pointing in favor of retaining jurisdiction in this district is that Plaintiffs chose the Southern District of New York as their forum."); *Carlton Int'l., PLC v. Am. Concord Techage, Inc.*, No. 94 CIV. 3750 (JFK), 1995 WL 450274, at *5 (S.D.N.Y. July 31, 1995) (granting motion to transfer when "Plaintiff's only contact with the Southern District of New York appears to be the location of their attorney").

## IV. Conclusion

For the foregoing reasons, the motion to transfer to the Northern District of Illinois is granted. The Court declines to reach the motion to dismiss. The Clerk of Court is directed to transfer this action to the Northern District of Illinois for all future proceedings.

This resolves Docket Number 19.

SO ORDERED.

Dated: __Feb 28__, 2017
       New York, New York

_____
ALISON J. NATHAN
United States District Judge